**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-00971-NYW-MDB

TERESA BEASLEY,

     Plaintiff,

v.

FRANK KENDALL III, in his official capacity,

     Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment (or the "Motion"). [Doc. 51]. The Court has reviewed the Motion and the related briefing and concludes that oral argument would not materially assist in the resolution of this matter. For the reasons set forth below, Defendant's Motion for Summary Judgment is respectfully **GRANTED**.

## BACKGROUND

This case arises out of the former employment relationship between Plaintiff Teresa Beasley ("Plaintiff" or "Ms. Beasley") and the United States Air Force Academy (the "Air Force Academy"). [Doc. 3 at 1]. Ms. Beasley alleges that, during her employment, she was subject to disability- and age-based discrimination. *See generally* [*id.*]. As a result, Plaintiff sued Frank Kendall III, the Secretary of the Air Force ("Defendant"), in his official capacity.[1] [*Id.* at 1]. She asserts two claims: one alleging

---

[1] "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159,

"Discrimination on the Basis of Disability" under the Rehabilitation Act, [*id.* at ¶¶ 31–36], and the other alleging "Discrimination on the Basis of Age" under the Age Discrimination in Employment Act ("ADEA"), [*id.* at ¶¶ 37–45].[2]  But as Judge Dominguez Braswell recognized, *see* [Doc. 34 at 8, 26], although Ms. Beasley does not bring separate hostile-work-environment claims, she nevertheless asserts that the alleged age-based and disability-based discrimination created an unlawful hostile work environment, *see, e.g.*, [Doc. 3 at ¶¶ 6, 10, 33, 38].  The Court thus construes each of Plaintiff's claims as alleging both discrimination and a hostile work environment.

On March 29, 2024, Defendant filed the instant Motion for Summary Judgment, arguing that he is entitled to judgment in his favor on each of Plaintiff's claims.  [Doc. 51]. Plaintiff opposes the Motion, [Doc. 57], and Defendant has replied, [Doc. 58].  The matter is ripe for resolution, and the Court considers the Parties' arguments below.

### LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).

---

165 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*

[2] Plaintiff also originally asserted a retaliation claim, *see* [Doc. 3 at ¶¶ 46–57], which has been dismissed, *see* [Doc. 34 at 29–34; Doc. 35 at 2].

A movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant has met this initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted). When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## UNDISPUTED MATERIAL FACTS

The following material facts are drawn from the summary judgment record and are undisputed unless otherwise noted.[3]

---

[3] The Court struck Plaintiff's originally filed response brief due to its non-compliance with the undersigned's Civil Practice Standards and Rule 56. *See* [Doc. 56]. Despite the Court's Minute Order, Plaintiff's new response remains non-compliant. In several instances, Ms. Beasley admits certain statements of fact, but improperly includes (often unsupported) additional information or attorney argument alongside that admission, *see, e.g.*, [Doc. 57 at ¶¶ 11, 23, 34], which violates the undersigned's Practice Standards, *see* NYW Civ. Practice Standard 7.1D(b)(7) (legal argument is not permitted in statements of fact). Similarly, many of the assertions in Plaintiff's Statement of Additional Disputed Facts are unsupported by citations to record evidence, *see, e.g.*, [Doc. 57 at ¶¶ 42–45], which violates Rule 56, *see* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."). The Court disregards all unsupported assertions or improper attorney argument contained in Plaintiff's statements of fact. *See Nash v. Wal-Mart Stores, Inc.*, No. 15-cv-02330-RM-MEH, 2017 WL 5188339, at *3 (D. Colo. Feb. 15, 2017) ("The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence."), *aff'd*, 709 F. App'x 509 (10th Cir. 2017).

1.      Ms. Beasley was previously employed by the Air Force Academy as a Sexual Assault Response Coordinator ("SARC"), including in 2016 and 2017.  [Doc. 51 at ¶ 1; Doc. 57 at ¶ 1; Doc. 51-1 at 29:10–20, 31:19–22].[4]

2.      During those years, Ms. Beasley was in her sixties.  [Doc. 51 at ¶ 3; Doc. 57 at ¶ 3; Doc. 3 at ¶ 7].

3.      As an SARC, Ms. Beasley was directly supervised by Colonel Kathleen Flarity ("Colonel Flarity"), the Program Manager of the Sexual Assault Prevention and Response ("SAPR") Office.  [Doc. 51 at ¶ 6; Doc. 57 at ¶ 6; Doc. 51-4 at ¶ 4].  Colonel David Harris ("Colonel Harris"), the Air Force Academy's Vice Superintendent, was Ms. Beasley's "second-line supervisor."  [Doc. 51 at ¶ 7; Doc 57 at ¶ 7; Doc. 51-2 at ¶ 4].

4.      In September 2016, Ms. Beasley used her personal vehicle to drive a sexual assault victim past the victim's alleged assailant's house.  [Doc. 51 at ¶ 12; Doc. 57 at ¶ 12; Doc. 51-1 at 93:9–22].

5.      After learning of Ms. Beasley's conduct via an anonymous report, Colonel Flarity informed Colonel Harris of the alleged misconduct, but she did not recommend that Colonel Harris take any specific action to address the conduct.  [Doc. 51 at ¶ 15; Doc. 57 at ¶ 15; Doc. 51-2 at ¶¶ 5–6]. Doc. 51-4 at ¶¶ 11–12].

6.      On September 29, 2016, Colonel Harris removed Ms. Beasley's Defense Sexual Assault Advocate Certification Program ("D-SAACP") credentials, which SARCs are required to hold, and suspended her authority to perform SARC duties.  [Doc. 51 at ¶¶ 11, 18; Doc. 57 at ¶¶ 11, 18; Doc. 51-2 at ¶ 11]; *see also* [Doc. 51-2 at 19].

---

[4] When citing to transcripts, the Court cites to the page and line numbers appearing on the original transcript, rather than the page numbers generated by the CM/ECF system. In all other instances, the Court cites to the page numbers generated by CM/ECF.

7.     Colonel Harris consulted with the legal office, civilian personnel, and the Air Force Academy's superintendent to determine the proper course of action.  [Doc. 51 at ¶ 16; Doc. 57 at ¶ 16; Doc. 51-2 at ¶ 7].  On October 6, 2016, Colonel Harris ordered a Commander Directed Investigation ("CDI") to look into "the facts and circumstances concerning an allegation" that an SARC "transported a victim in their privately owned vehicle" (the "First CDI").  [Doc. 51 at ¶ 19; Doc. 57 at ¶ 19; Doc. 51-2 at ¶ 12].

8.     On October 20, 2016, Colonel Harris temporarily reassigned Ms. Beasley to another building and directed her to report to another colonel for day-to-day items.  [Doc. 51 at ¶ 20; Doc. 57 at ¶ 20; Doc. 51-2 at ¶ 13].  Captain Brian Kingcade ("Captain Kingcade"), the Air Force Academy's Deputy SARC, stepped in to handle Ms. Beasley's role, which was standard practice in the event that an SARC was not present.  [Doc. 51 at ¶¶ 4, 21; Doc. 57 at ¶¶ 4, 21; Doc. 51-3 at 14:20–22; Doc. 51-4 at ¶ 16].

9.     The First CDI was completed on November 4, 2016.  [Doc. 51 at ¶ 23; Doc. 57 at ¶ 23; Doc. 51-2 at ¶ 15].  The First CDI substantiated the allegation that Ms. Beasley had driven the victim in her personal vehicle, in violation of instructions and the code of professional ethics, and further noted that Ms. Beasley had admitted to the allegation during the investigation.  [Doc. 51 at ¶ 23; Doc. 57 at ¶ 23; Doc. 51-2 at 35].

10.     In January 2017, Ms. Beasley's D-SAACP credentials were reinstated and she returned to her SARC role.  [Doc. 51 at ¶ 24; Doc. 57 at ¶ 24; Doc. 51-2 at ¶ 16].

11.     Colonel Harris issued a letter of reprimand to Ms. Beasley in February 2017.  [Doc. 51 at ¶ 25; Doc. 57 at ¶ 25; Doc. 51-2 at 58–59].

12.     Colonel Flarity left the Air Force Academy in May 2017, and thereafter, she was not involved in any personnel actions related to Ms. Beasley.  [Doc. 51 at ¶¶ 26–27; Doc. 57 at ¶¶ 26–27; Doc. 51-4 at ¶¶ 3, 18–20].

13.     After Colonel Flarity's departure, Dr. Kimberly Dickman ("Dr. Dickman") became Ms. Beasley's interim supervisor.  [Doc. 51 at ¶ 28; Doc. 57 at ¶ 28; Doc. 51-5 at ¶¶ 3–4].

14.     In May 2017, Colonel Harris instituted another CDI into the culture, climate, and performance of the Air Force Academy's SAPR office to determine whether the office was "able to meet its mission by providing professional victim care to those who've suffered sexual assault" (the "Second CDI").  [Doc. 51 at ¶¶ 29–30; Doc. 57 at ¶¶ 29–30; Doc. 51-2 at ¶ 18; Doc. 51-2 at 74].

15.     In addition to allegations against other SARC employees, the Second CDI looked into allegations against Ms. Beasley, including that:

    a.  Ms. Beasley failed to properly address ethical concerns about SARC/SAPR staff and failed to effectively manage SARC/SAPR personnel;

    b.  Ms. Beasley allowed a climate of favoritism to exist between leadership and subordinates and also spread rumors about personnel; and

    c.  Ms. Beasley demonstrated a lack of competency or ability that jeopardized the delivery of professional victim advocacy.

[Doc. 51 at ¶ 31; Doc. 57 at ¶ 31; Doc. 51-2 at 69].

16.     Lieutenant Colonel Michael Growden ("Lieutenant Colonel Growden"), an Air Force Academy professor, served as the investigating officer for the Second CDI.  [Doc. 51 at ¶ 32; Doc. 57 at ¶ 32; Doc. 51-2 at ¶ 21].

17.     Lieutenant Colonel Growden prepared a report after completing the Second CDI.  [Doc. 51 at ¶ 33; Doc. 57 at ¶ 33; Doc. 51-2 at 51].  The Second CDI report

concluded that all of the allegations against Ms. Beasley were substantiated or partially substantiated.  [Doc. 51 at ¶ 32; Doc. 57 at ¶ 34; Doc. 51-2 at 75–99].

18.     In the Second CDI report, Lieutenant Colonel Growden recommended that Ms. Beasley be removed as an Air Force Academy SARC and that her supervisory duties be withdrawn.  [Doc. 51 at ¶ 35; Doc. 57 at ¶ 35; Doc. 51-2 at 101].

19.     On June 27, 2017, the Air Force Academy Superintendent revoked Ms. Beasley's D-SAACP credentials and victim advocate duties, and Ms. Beasley was placed on administrative leave pending a decision about the appropriate action to take.  [Doc. 51 at ¶¶ 29, 36–37; Doc. 57 at ¶¶ 29, 36–37; Doc. 51-2 at ¶¶ 7, 26; Doc. 51-5 at ¶ 12].

20.     On August 14, 2017, Dr. Dickman issued Ms. Beasley a notice of proposed removal for "failing to maintain a condition of employment (D-SAACP certification), conduct unbecoming [of] a federal employee and carelessness in the performance of [her] duties."  [Doc. 51 at ¶ 39; Doc. 57 at ¶ 39; Doc. 51-5 at 9].

21.     On August 19, 2017—five days after receiving the notice of proposed removal—Ms. Beasley retired from the Air Force Academy.  [Doc. 51 at ¶ 40; Doc. 57 at ¶ 40; Doc. 3 at ¶ 25].

## ANALYSIS

Defendant seeks summary judgment in his favor on each of Plaintiff's claims.  *See generally* [Doc. 51].  The Court first addresses Defendant's arguments related to Plaintiff's discrimination claims under the Rehabilitation Act and the ADEA.  Then, to the extent Plaintiff asserts a claim under either statute based on an alleged hostile work environment, the Court addresses those claims together.  *See Howell v. N.M. Dep't of Aging & Long Term Servs.*, 398 F. App'x 355, 359 (10th Cir. 2010) (explaining that "[a]ge

discrimination can form the basis of a hostile-environment claim"); *see also Clancy v. Miller*, 837 F. App'x 630, 635 n.1 (10th Cir. 2020) ("We assume that [a plaintiff] may bring a hostile-work-environment claim under the Rehabilitation Act."); *cf. Goodson v. DeJoy*, No. 22-1338, 2023 WL 4782947, at *9 (10th Cir. July 27, 2023) (recognizing that hostile work environment claims are cognizable under the ADA); *Woodman v. Runyon*, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997) ("Cases decided under section 504 of the Rehabilitation Act are therefore applicable to cases brought under the ADA and vice versa, except to the extent the ADA expressly states otherwise.").

## I.    Disability Discrimination Under the Rehabilitation Act

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The Rehabilitation Act "prohibits the federal government and federally funded programs from discriminating against individuals on the basis of a disability" and "creates a private right of action for disabled individuals, including federal employees who claim disability discrimination in connection with their employment."  *Detterline v. Salazar*, 320 F. App'x 853, 856 (10th Cir. 2009).

"Without direct evidence of discrimination, claims under the Rehabilitation Act are subject to the *McDonnell Douglas* burden-shifting framework."  *Ford v. Brennan*, No. 21-4086, 2023 WL 5606233, at *4 n.7 (10th Cir. Aug. 30, 2023);[5] *see also McDonnell*

---

[5] Ms. Beasley does not argue that she can present (nor does she actually present any) direct evidence of disability discrimination and applies the *McDonnell Douglas* framework to her Rehabilitation Act discrimination claim.  *See* [Doc. 57 at 10–11].

*Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  Using this framework at summary judgment, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005).  If the plaintiff meets this burden, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged adverse employment action.  *Id.*  And if the defendant does so, the burden reverts to the plaintiff to demonstrate that the defendant's proffered basis for the employment decision is merely pretext.  *Id.*

To establish a prima facie discrimination case, Plaintiff must show that (1) she was disabled under the statute; (2) she was otherwise qualified for her position; and (3) she was discriminated against due to her disability.  *Woodman*, 132 F.3d at 1338.  To show discrimination because of a disability, the plaintiff must "present some affirmative evidence that disability was a determining factor in the employer's decision."  *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1197 (10th Cir. 2023) (quotation omitted).  One way that a plaintiff can meet this burden is by showing that similarly situated employees were treated more favorably than the plaintiff.  *See Fox v. Nicholson*, 304 F. App'x 728, 730 (10th Cir. 2008).  In addition, "[e]vidence of critical comments about a plaintiff's disability" or "a close temporal proximity between the employer learning about the disability and taking adverse employment action" may establish disability-based discrimination.  *Dennis v. Fitzsimons*, 850 F. App'x 598, 602 (10th Cir. 2021).  However, "mere awareness of" an employee's disability "does not constitute affirmative evidence that disability was a determining factor" in an employment decision.  *Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa Cnty.*, 232 F. App'x 765, 771–72 (10th Cir. 2007).

Defendant argues that summary judgment on this claim is appropriate because Plaintiff cannot show that she was discriminated against because of her disability—and cannot satisfy her burden to establish a prima facie discrimination case—as "there is no evidence in the record to . . . support an inference of discrimination." [Doc. 51 at 12]. Specifically, Defendant notes that there is no evidence that the Air Force Academy decisionmakers made critical comments about Ms. Beasley's disability or that they otherwise considered her disability in temporarily reassigning her duties to Captain Kingcade or issuing the proposed notice of removal.[6]  [*Id.* at 12–13].  Defendant also contends that there is no record evidence that Ms. Beasley was treated less favorably than similarly situated coworkers.  [*Id.* at 13–14].  Because Defendant points to a lack of evidence supporting an essential element of Ms. Beasley's claim, Plaintiff must come forward with evidence sufficient to create a genuine issue of material fact as to that element.  *Adler*, 144 F.3d at 671; *Breen v. Black*, 709 F. App'x 512, 513 (10th Cir. 2017).

Plaintiff responds by apparently conceding that "she cannot show that any other employee was similarly situated to her," asserting that she "is not required to allege that she is similarly situated to anyone."  [Doc. 57 at 13].  While this may be true, as discussed above, Ms. Beasley points to no direct evidence of discrimination, *see supra* note 5, and she acknowledges that "[a] decisionmaker's mere awareness of a disability is insufficient to establish the third element of the prima facie case."  [*Id.* (cleaned up)].  Despite her

---

[6] The Parties disagree as to whether the proposed notice of removal constitutes an adverse employment action. *See* [Doc. 51 at 10–11; Doc. 57 at 11–12].  The Court need not decide this issue to resolve the Motion for Summary Judgment because even assuming, without deciding, that the notice of proposed removal is an adverse employment action, Ms. Beasley's disability discrimination claim fails because, as explained below, she has not met her prima facie burden on this claim.

repudiation of the similarly-situated inquiry, Plaintiff goes on to argue that she and "her
subordinate"—whom she does not identify by name or other identifying features—
"engage[d] in similarly related serious misconduct," pointing to an allegation in her
Complaint that the subordinate "drove victims in a personal vehicle to appointments on
base." [*Id.*]. She argues that this alleged conduct "is sufficiently similar to her misconduct
to support an inference of discrimination." [*Id.* (emphasis omitted)].[7]    This Court
respectfully disagrees.

The unclear and contradictory nature of Plaintiff's argument is likely attributable to
Plaintiff's decision to copy this portion of her brief, among many others, from Defendant's
Motion, swapping out limited portions of Defendant's work product with converse words
or phrases. *Compare* [Doc. 51 at 14], *with* [Doc. 57 at 13].[8]  In any event, Plaintiff cannot
demonstrate a genuine dispute of fact as to disability discrimination based on the
treatment of similarly situated employees, given that she fails to affirmatively identify any

---

[7] Plaintiff alleges in her Complaint that other staff, including an employee named Alma
Leigh Mohr, had also driven victims in their personal vehicle but were not reprimanded
for doing so.  [Doc. 3 at ¶ 11].  Plaintiff does not meaningfully pursue this theory of
disability discrimination at this stage in the proceedings by presenting any evidence that
is required at the summary judgment stage.  Fed. R. Civ. P. 56(c)(1); *Sender v. Mann*,
423 F. Supp. 2d 1155, 1162 (D. Colo. 2006) ("Once a properly supported summary
judgment motion is made, the opposing party may not rest on the allegations" in the
complaint, "but must respond with specific facts showing the existence of a genuine
factual issue to be tried.").

[8] Substantial portions of Plaintiff's response—including recitations of legal authority and
even affirmative arguments—are copied directly from Defendant's Motion with only
minimal changes (or no changes at all).  *Compare, e.g.*, [Doc. 51 at 11], *with* [Doc. 57 at
12]; *compare* [Doc. 51 at 14], *with* [Doc. 57 at 13]; *compare* [Doc. 51 at 15–16], *with* [Doc.
57 at 15].  Counsel's decision to use Defendant's Motion as a template has largely
resulted in confusing or underdeveloped responsive arguments.  "[T]here is never an
excuse for appropriating the work of another lawyer—let alone opposing counsel—and
presenting it as one's own."  *Stilp v. Borough of W. Chester*, No. 2:21-cv-03989-GEKP,
2022 WL 10208256, at *1 (E.D. Pa. Oct. 17, 2022).

similarly situated comparator, instead conceding that none exists.  *See* [Doc. 57 at 13];
*see also Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001) (the plaintiff bears
the burden of showing that she and other employees were similarly situated); *Timmerman
v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007) (explaining that employees are
similarly situated if they deal with the same supervisor, are subject to the same
employment standards, and violated workplace rules of comparable seriousness).
Moreover, Plaintiff's reliance on a single allegation in her Complaint—as opposed to
record evidence—is insufficient to create a genuine dispute of fact.  *See Mountain
Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) (to avoid summary
judgment, the non-moving party must "go beyond the pleadings and designate specific
facts so as to make a showing sufficient to establish the existence of an element essential
to [her] case" (quotation omitted)); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th
Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment
proceedings.").

In the alternative, Plaintiff asserts that Colonel Flarity and Colonel Harris
"discussed Ms. Beasley's work at the time Colonel Flarity recommended that Ms. Beasley
be suspended."  [Doc. 57 at 14].  She argues that "it is not unreasonable to infer that
Colonel Flarity made some mention of Ms. Beasley's health" during that purported
discussion, as (1) Ms. Beasley's employment file contained an absenteeism-related
reprimand and (2) "Colonel Flarity is alleged to have criticized Ms. Beasley for excessive
sick leave."  [*Id.*].  There are a number of issues with Plaintiff's argument.  First, it is
undisputed that Colonel Flarity *did not* make any recommendation as to appropriate
discipline after Ms. Beasley drove a victim in her personal vehicle.  [Doc. 51 at ¶ 15; Doc.

57 at ¶ 15].   Ms. Beasley's contradictory assertion is not supported by any citation to record evidence, *see* [Doc. 57 at 14], and therefore, cannot create a genuine issue of material fact to avoid summary judgment.   Similarly, Ms. Beasley's statement that she had been reprimanded for absenteeism is unsupported by record evidence, *see* [*id.*],[9] and carries no weight at summary judgment, *see Bones*, 366 F.3d at 875.

Second, in the Court's view, it *would* be unreasonable to infer that Plaintiff's disability played a role in Colonel Harris's decision to temporarily reassign Plaintiff or Dr. Dickman's issuance of the notice of proposed removal simply because Colonel Flarity made comments about Plaintiff's use of sick leave, given that there is no evidence that Colonel Flarity played any role in those decisions or that these decisionmakers were aware of Colonel Flarity's comments or views.   An inference "is unreasonable if it requires a degree of speculation and conjecture that renders the factfinder's findings a guess or mere possibility."   *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (cleaned up); *see also Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (at summary judgment, "the court acts as a gatekeeper, granting judgment as a matter of law unless the plaintiff has adduced relevant and probative evidence sufficient to support a jury verdict in his or her favor").   Plaintiff has not adduced sufficient evidence from which the jury could draw that inference and has thus not demonstrated a triable issue of fact.

---

[9] Plaintiff's assertion that Colonel Flarity made comments about Plaintiff's sick leave is similarly unsupported by a record citation.   *See* [Doc. 57 at 14].   However, the Court notes that Plaintiff cites evidence in another portion of her response showing that Colonel Flarity made critical comments about Plaintiff's absences.   *See* [*id.* at 19; Doc. 51-1 at 304:4–17].

Finally, Plaintiff invokes the "cat's paw" theory of liability, *see* [Doc. 57 at 14], which "allows a plaintiff to establish pretext even without evidence that the 'actual decisionmaker' possessed an unlawful motive," *Singh v. Cordle*, 936 F.3d 1022, 1038 (10th Cir. 2019) (quoting *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015)). Under this theory, "an employer who acts without discriminatory intent can be liable for a subordinate's discriminatory animus if the employer uncritically relies on the biased subordinate's reports and recommendations in deciding to take adverse employment action." *Thomas*, 803 F.3d at 514. "[T]o survive summary judgment when asserting the cat's-paw theory of liability, a plaintiff must show that there is a genuine issue of material fact that (1) the subordinate took action motivated by discriminatory animus; (2) the subordinate intended the action to cause an adverse employment action, and (3) the subordinate's actions proximately caused the intended adverse employment action." *Singh*, 936 F.3d at 1038.

Ms. Beasley argues that "it is clear [the CDIs] were not independent in the least" because she has "ma[de] certain assertions suggesting that [the Second CDI] was tainted by bias against her." [Doc. 57 at 14]. She directs the Court to a 2019 Inspector General report (the "IG Report"), which she asserts "found that 'Plaintiff ran an effective work environment'"—language that Plaintiff draws not from the IG Report, but from her own Complaint. [*Id.* (quoting [Doc. 3 at ¶ 21])]. She then concludes, without explanation, that "[t]he Court thus should not conclude as a matter of law that Ms. Beasley did not suffer an adverse employment action because of her disability in relation to the Notice of Proposed Removal. This is a material fact in genuine dispute." [*Id.*].

Plaintiff's argument is not meaningfully developed. It is unclear whether Plaintiff's contention is that the Second CDI was cloaked in bias and that itself is sufficient for Defendant to be liable under a cat's-paw theory, or whether her assertion is that some unnamed individual—perhaps Colonel Flarity—was biased against her and that, because the Second CDI was also biased, the Second CDI cannot break the causal connection between Colonel Flarity's bias and the notice of proposed removal.[10]

Under either theory, Plaintiff's argument is insufficient to avoid summary judgment. Again, Plaintiff's unsubstantiated allegations in her Complaint carry no probative weight at summary judgment, *Bones*, 366 F.3d at 875, and Plaintiff does not explain how the IG Report demonstrates that she "ran an effective work environment" or contradicts the Second CDI, as she claims. *See* [Doc. 57 at 14]. Nor does Plaintiff direct the Court to evidence from which a reasonable jury could conclude that the Second CDI was tainted by bias; her conclusory statement that the IG Report "contradicted" the Second CDI is unsupported by evidence. [*Id.*]. Plaintiff notes that the IG Report concluded that "[Air Force Academy] SAPR personnel provided SAPR services to cadet-victims and victim support services were available to cadet-victims at the USAFA as required by DoD and Air Force policy." *See* [*id.* at ¶ 50 (quoting [Doc. 57-3 at 3])]. But she fails to articulate how this unremarkable finding—that SAPR employees provided SAPR services to

---

[10] An employer can break the causal chain between a subordinate's biased behavior and an adverse employment action by conducting an independent investigation into the grounds for dismissal. *Singh*, 936 F.3d at 1038. "But simply *conducting* an independent investigation does not automatically immunize an employer from liability under the cat's-paw theory." *Id.* "A subordinate supervisor's biased input may still be a proximate cause of the adverse action if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.* (quotation omitted).

victims—could permit a reasonable jury to find that the Second CDI, which undisputedly substantiated a number of allegations about Ms. Beasley's management and workplace practices, was cloaked in bias.

Moreover, to the extent Plaintiff is intending to argue that the Second CDI cannot break the causal connection between an unidentified biased subordinate and the notice of proposed removal, she does not she does not clearly identify *who* was purportedly biased against her or argue that the biased individual's actions proximately caused her proposed removal. *Singh*, 936 F.3d at 1038; *see also* [Doc. 57 at 14]. If Plaintiff believes Colonel Flarity's bias proximately caused the employment decisions, it is undisputed that Colonel Flarity had no input in Ms. Beasley's reassignment or the notice of proposed removal. [Doc. 51 at ¶ 15; Doc. 57 at ¶ 15]. In other words, Plaintiff's invocation of the cat's-paw theory does not create a genuine dispute of fact or permit her to survive summary judgment.

In sum, Plaintiff has not presented "affirmative evidence that disability was a determining factor in the employer's decision," *Hampton*, 87 F.4th at 1197, and has not met her burden under *McDonnell Douglas* to establish a prima facie discrimination claim. Therefore, the Motion for Summary Judgment is **GRANTED** as to Plaintiff's Rehabilitation Act claim, to the extent it alleges discrimination based on Plaintiff's disability.

## II.    Age Discrimination Under the ADEA

The ADEA "provides (with just a few exceptions) that 'personnel actions' affecting individuals aged 40 and older 'shall be made free from any discrimination based on age.'" *Babb v. Wilkie*, 589 U.S. 399, 402 (2020) (quoting 29 U.S.C. § 633a(a)). The *McDonnell Douglas* burden-shifting framework applies to disparate treatment claims under the

ADEA.  *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020).

A plaintiff establishes a prima facie age discrimination case by directing the Court to evidence that "1) she is a member of the class protected by the [ADEA]; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class."  *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (alteration in original) (quotation omitted).  In addition, because Plaintiff seeks compensatory damages and an injunction ordering the removal of "negative employment actions from Ms. Beasley's record," [Doc. 3 at 22], she must ultimately show that her age was "a but-for cause of the employment outcome," *Babb*, 589 U.S. at 413 (explaining that because the plaintiff's requested relief must redress the alleged injury, a plaintiff requesting relief "related to the end result of an employment decision" must prove but-for causation).[11]

Defendant contends that he is entitled to summary judgment on this claim because Plaintiff cannot show that her age was the but-for cause of the alleged adverse employment actions.  [Doc. 51 at 17–18].  He argues that there is no record evidence showing that age was even considered in the course of Ms. Beasley's temporary reassignment or the notice of proposed removal, let alone evidence that her age was the but-for cause of those events.  [*Id.*].

Ms. Beasley responds by pointing out her age at the time of the alleged adverse actions and asserting, without citation, that her age was "well known to her chain of

---

[11] Plaintiff does not dispute that she must establish but-for causation.  *See* [Doc. 57 at 16–17].

command." [Doc. 57 at 16]. She argues that "the Court should consider whether [she] was treated less favorably than others not in her protected class, and whether Ms. Beasley's age was a but-for cause of the adverse employment actions taken against her." [*Id.*]. But instead of affirmatively identifying an employee outside of her protected class or directing the Court to affirmative evidence demonstrating that her age was the but-for cause of the challenged decisions, she simply asserts that her "allegations are sufficient to show that age was considered or was a motivating factor" in the adverse actions. [*Id.* at 17]. Again, Plaintiff cannot defeat a summary judgment motion by relying on mere allegations, *Bones*, 366 F.3d at 875, and it is not this Court's duty to piece together Plaintiff's arguments for her, *N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.*, 645 F. App'x 795, 803 (10th Cir. 2016).

At best, Plaintiff argues that "the record has shown that Colonel Harris and Lieutenant General Silveria[12] had knowledge of Ms. Beasley's age, and that her age played a but-for role in the Notice of Proposed Removal." [Doc. 57 at 15 (footnote added)]. However, Ms. Beasley supplies no legal authority demonstrating that knowledge of a plaintiff's age alone is sufficient to establish but-for causation. *See generally* [Doc.

---

12 Plaintiff does not cite any evidence demonstrating Lieutenant General Silveria's involvement in the events leading to this case; in fact, Lieutenant General Silveria is not mentioned anywhere else in Plaintiff's brief. *See generally* [Doc. 57]. The Complaint alleges that Lieutenant General Silveria was the final decisionmaker "regarding the [Second] CDI," *see* [Doc. 3 at ¶ 18], but it is undisputed at summary judgment that Lieutenant Colonel Growden completed the Second CDI and recommended that Ms. Beasley be removed as an SARC, [Doc. 51 at ¶¶ 33, 35; Doc. 57 at ¶¶ 33, 35]. It is further undisputed that Dr. Dickman who issued the proposed notice of removal. [Doc. 51 at ¶ 39; Doc. 57 at ¶ 39]. Any uncertainty as to Lieutenant General Silveria's involvement in the notice of proposed removal is not material to the Court's analysis because even if he was a final decisionmaker, his knowledge of Plaintiff's age alone is insufficient to establish age-based discrimination.

57].  Indeed, legal authority points in the other direction.  *See Just v. James River, II, Inc.*, 784 F. Supp. 1145, 1151 (D. Del. 1992) ("[M]ere awareness of a plaintiff's age does not show that these facts entered into an employer's decision."); *Meyer v. McDonald*, 241 F. Supp. 3d 379, 391 (E.D.N.Y. 2017) (evidence that employer was aware of the plaintiff's age did not give rise to an inference of age discrimination), *aff'd sub nom. Meyer v. Shulkin*, 722 F. App'x 26 (2d Cir. 2018).[13]  Moreover, Plaintiff again fails to direct the Court to evidence in support of her argument, instead relying on an unsupported statement in her response in opposition to Defendant's Motion to Dismiss.  *See* [Doc. 57 at 15 (citing [Doc. 31 at 16])].   Accordingly, Plaintiff has not adduced evidence from which a reasonable jury could conclude that age was the but-for cause of the alleged adverse actions and has not identified a genuine issue of fact precluding summary judgment in Defendant's favor.  Defendant's Motion for Summary Judgment is therefore respectfully **GRANTED** with respect to Plaintiff's ADEA discrimination claim.

## III.    Hostile Work Environment Under the Rehabilitation Act and the ADEA

"A hostile work environment is a workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

---

[13] Elsewhere in her brief, Plaintiff cites to evidence that an employee overheard Colonel Flarity "making comments about [Ms. Beasley] needing to retire."  *See* [Doc. 57 at ¶ 45; *id.* at 19]; *see also* [Doc. 57-1 at 31:12–13].  Plaintiff relies on this evidence in support of her hostile-work-environment claim, *not* her age discrimination claim.  *Compare* [Doc. 57 at 16–17], *with* [*id.* at 17–19].  Indeed, Plaintiff does not argue that this evidence is sufficient to create a genuine dispute of material fact with respect to but-for causation, and the Court concludes that it does not, particularly in light of the undisputed facts that (1) Colonel Flarity did not recommend any particular action with respect to Ms. Beasley driving the victim past the alleged assailant's home and (2) Colonel Flarity left the Air Force Academy in May 2017 and had no further involvement in any personnel actions related to Ms. Beasley.  [Doc. 51 at ¶¶ 15, 26–27; Doc. 57 at ¶¶ 15, 26–27]; *see also Wagoner v. Pfizer, Inc.*, 391 F. App'x 701, 708 (10th Cir. 2010) (concluding that inquiry into retirement plans did not support age bias under the particular facts of the case).

conditions of employment and create an abusive working environment." *Dye v. Moniz*, 672 F. App'x 836, 839 (10th Cir. 2016) (quotation omitted). To establish a severe or pervasive hostile work environment, "the plaintiff must: (1) subjectively perceive 'the conduct to be severe or pervasive,' and (2) 'show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1228 (10th Cir. 2022) (quoting *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021)).

Severity and pervasiveness "are independent and equal grounds upon which a plaintiff may establish . . . a hostile environment claim." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008). The two grounds "are, to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute." *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 521 (10th Cir. 2017) (quotation omitted). To determine whether a workplace is hostile, courts look at the "totality of the circumstances," considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (quotation omitted). "[I]solated incidents of discriminatory conduct" or "run-of-the mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces are insufficient to support a claim for hostile work environment." *Ford*, 45 F.4th at 1228 (quotation omitted). Courts recognize that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is inherently fact-found by nature." *Lounds v. Lincare,*

*Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (quotation omitted). But in "proper circumstances," a court may decide the issue, *see Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1130 n.5 (10th Cir. 2003), and the Tenth Circuit has "often . . . affirmed the resolution of this issue at the summary judgment stage," *McElroy v. Am. Fam. Ins.*, 630 F. App'x 847, 849 (10th Cir. 2015).

Defendant argues, inter alia, that Plaintiff cannot establish that she was the victim of a hostile work environment because she has adduced no evidence that any of the alleged discrimination was sufficiently severe or pervasive so as to alter the terms and conditions of her employment or create an abusive working environment. [Doc. 51 at 19–20]. More specifically, he contends that (1) there is no evidence showing, with specificity, the frequency of the alleged discriminatory comments; (2) the alleged comments were not physically threatening or humiliating; and (3) there is no evidence that the comments interfered with Plaintiff's job performance. [*Id.* at 20].

Plaintiff disagrees, arguing that her hostile work environment claims "go[] far beyond a few isolated incidents of discrimination because of her age" or disability. [Doc. 57 at 18]. To support this assertion, she primarily relies on allegations from her Complaint, *see* [*id.* at 18–19], which the Court disregards for the reasons discussed throughout this Order. Plaintiff does, however, direct the Court to some deposition testimony detailing some comments that were made to or about her. *See* [*id.* at 19 (citing [Doc. 51-1 at 304:7–17, 315:18–24])]; *see also* [*id.* at ¶ 45 (citing [Doc. 57-1 at 37:16–19])]. With respect to alleged age-based comments, Plaintiff cites Ms. Mohr's deposition, wherein Ms. Mohr stated that she "remember[ed] Flarity making comments about [Ms. Beasley] needing to retire." [Doc. 57-1 at 31:12–13]. And in her own deposition, Ms.

Beasley discussed how Captain Kingcade and Colonel Flarity purportedly discriminated

against her because of her age:

> Q.  And Captain Kingcade, how did Captain Kingcade discriminate against
> you based on your age?
>
> A.  Again, more subtle, more innuendo, more just kind of snide comments
> about other people who were my age, and it's time for them to go, you
> know.  He said in my presence too, that lady Candace I was talking
> about, she's been around forever, it's time for her to go.  They need to
> bring in some young blood, that was his thing, bring in some young
> blood.  This is a young institution and we need young people here.  He
> would say those things not about me specifically, but around me.
>
> Q.  And what specifically, what actions did Colonel Flarity take that proved
> -- that showed you she was discriminating against you based on your
> age?
>
> A.  The comments she began saying, isn't it time for you to go where you'd
> be appreciated, you've outlived your usefulness here, those kind of
> comments.  During that meeting in July it started.

[Doc. 51-1 at 315:8–24].  As for comments about her disability, Ms. Beasley recalled the

following comments during her deposition:

> Q.  How did Colonel Flarity show what I'll call favoritism to Colonel -- or,
> excuse me, to Captain Kingcade as opposed to you?
>
> A.  One of the things that Colonel Flarity was very upset with me about
> was she was really on me on the calendar.  And I couldn't predict when
> a victim was going to report.  It was very unpredictable.  She never
> seemed to get that, and I would -- I was getting sick from being on call
> all the time, and when I tried to call in and use my flex time, she'd get
> upset.  She talked to people around.  She would make comments like,
> Ms. Beasley is like my sister, who's an alcoholic and a burden to
> others, and this would come back to me.  So I know she was talking to
> other people about me.

[*Id.* at 304:4–17].[14]

---

[14] The remaining statements highlighted by Plaintiff and supported by evidence may
demonstrate rudeness toward or a dislike of Plaintiff, but they do not concern Plaintiff's
age or disability.  *See* [Doc. 57-2 at 18:18–19 (Major Kimberly Bitter stating that "[Ms.

Ms. Beasley argues that these comments "were pervasive enough to alter the terms, conditions, or privilege[s] of [Plaintiff's] employment," asserting (without citation) that she "has now testified as to the frequency of the purported discriminatory comments." [Doc. 57 at 19].  She further contends, again without citation, that "there is evidence that the alleged comments interfered with [her] job performance" because "her poor performance was directly due to the pervasive and continuous abuse that she sustained in that position from her leadership."  [*Id.* at 20].

The Court respectfully concludes that Plaintiff has not created a genuine dispute of fact that the above comments, either individually or in combination, were so severe or pervasive that they altered the terms or conditions of her employment or created an abusive environment.  Turning first to disability-related comments, Ms. Beasley does not direct the Court to any evidence showing how frequently these comments were made.  A "few isolated" comments are typically not enough to establish a hostile work environment; rather, to show pervasiveness, "there must be a steady barrage" of discriminatory comments.  *Lounds*, 812 F.3d at 1223 (quotations omitted).  Although *Defendant* cites Ms. Beasley's deposition testimony stating that Colonel Flarity "would frequently

---

Beasley] was the kind of person that Colonel Flarity considered less than."); *id.* at 19:15–22 (Colonel Flarity was "mostly dismissive" of Ms. Beasley, and if Ms. Beasley "was allowed to talk, then Colonel Flarity would either dismiss her outright or kind of rush through what she was trying to say to move on to someone else"); *id.* at 22:4–10 (Colonel Flarity planned to take over Ms. Beasley's position, which "[held] a little but of a maybe higher status" and which might lead to Colonel Flarity's promotion)].  Generally, "rude behavior alone is insufficient to show a hostile work environment," *Held v. Ferrellgas, Inc.*, 505 F. App'x 687, 691 (10th Cir. 2012), and although facially neutral conduct can support a finding of discriminatory animus "when that conduct is viewed in the context of other, overtly []discriminatory conduct," *Throupe*, 988 F.3d at 1251 (quotation omitted), the totality of the circumstances here do not amount to evidence from which a reasonable jury could find a disability- or age-based hostile work environment, given the lack of evidence demonstrating severity or pervasiveness, discussed below.

disparage [her]," [Doc. 51-1 at 212:17–18], this vague assertion is insufficient to demonstrate pervasiveness, *see Nettle v. Cent. Okla. Am. Indian Health Council, Inc.*, 334 F. App'x 914, 922 (10th Cir. 2009) (affirming district court's determination that the plaintiff had not demonstrated a hostile work environment where she only stated that there were "frequent" discriminatory comments but "offer[ed] no evidence regarding the frequency of [the] offensive remarks").  And Plaintiff provides little detail regarding the actual substance of Colonel Flarity's alleged comments or actions; the only evidence before the Court is that Colonel Flarity was "upset" with Ms. Beasley for using sick leave and felt that she was a burden to others.  The Court cannot conclude from this limited evidence that these comments were so severe that, regardless of their frequency, they created a hostile work environment.  *See Morris v. City of Colo. Springs*, 666 F.3d 654, 666–67 (10th Cir. 2012) (where only isolated incidents are alleged, the comments must be "especially egregious or extreme"); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1217–18 (10th Cir. 2008) (rude or unprofessional remarks are "not indicative of the pervasively hostile work environment necessary to survive the objective test of the second prong of the prima facie case standard").

The Court reaches the same conclusion with respect to the age-based comments.  Plaintiff directs the Court to evidence that (1) Colonel Flarity said that Ms. Beasley needed to retire and had "outlived [her] usefulness" at the Air Force Academy, and (2) Captain Kingcade made "snide comments about other people who were [Ms. Beasley's] age" and said that the Air Force Academy needed to bring in "young blood."  [Doc. 51-1 at 315:8–24].  Again, Plaintiff directs the Court to no evidence regarding the frequency of these alleged comments, which precludes a finding that these comments were pervasive

enough to create a workplace "permeated with discriminatory intimidation, ridicule, and insult." *Dye*, 672 F. App'x at 839. *Compare* [Doc. 57], *with Alfonso v. SCC Pueblo Belmont Operating Co., LLC*, 912 F. Supp. 2d 1018, 1032 (D. Colo. 2012) (denying employer's motion for summary judgment where the decisionmaker in the plaintiff's termination "made derogatory age-related comments directly to her on an almost daily basis"). Nor could a reasonable jury conclude that the age-related comments were severe enough to create a hostile environment. *See DeWalt v. Meredith Corp.*, 288 F. App'x 484, 495 (10th Cir. 2008) (comments referring to employees as "dinosaurs" and calling employees "old" were "insufficient to show that the . . . workplace was permeated with discriminatory insult"); *Smith v. McDonough*, No. 20-cv-01321-KK-JFR, 2024 WL 2804428, at *8 (D.N.M. May 31, 2024) ("[E]ven if the Court were to infer that [the employer] acted with age-based discriminatory animus in commenting that Plaintiff should 'retire so they could be happy,'" . . . as a matter of law this alleged comment constitutes 'a mere offensive utterance' rather than intimidation, ridicule, or insult so severe or pervasive that it altered the conditions of Plaintiff's employment." (quotation omitted)).

In sum, Plaintiff has not directed the Court to evidence establishing a genuine dispute of material fact as to a severe or pervasive hostile work environment. Accordingly, the Motion for Summary Judgment is respectfully **GRANTED** with respect to Plaintiff's hostile-work-environment Rehabilitation Act and ADEA claims.

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)    Defendant's Motion for Summary Judgment [Doc. 51] is **GRANTED**;

(2)    Judgement is **ENTERED** in favor of Defendant and against Plaintiff on all of

Plaintiff's remaining claims;

(3)    Defendant is entitled to his costs pursuant to Rule 54 and Local Rule 54.1;

and

(4)    The Clerk of Court is directed to close this case.

DATED:  October 29, 2024                    BY THE COURT:

Nina Y. Wang
United States District Judge